**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **LESLEY A. WEST, ET AL.,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-131** |
| | ) | |
| **JOHN KOSKINEN, COMMISSIONER** | ) | |
| **OF THE U.S. INTERNAL REVENUE** | ) | |
| **SERVICE,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

In this tax refund suit, plaintiffs seek a refund of $317,821.05 in late filing and late payment penalties imposed by the Internal Revenue Service ("IRS") on the estate for which plaintiffs are executors. Plaintiffs seek this relief on the ground that the estate's late filing of the tax return and late payment of the taxes due was based on plaintiffs' reasonable reliance on the erroneous advice of counsel, which plaintiffs contend constitutes "reasonable cause" to excuse the late filing and payment under 26 U.S.C. § 6651(a). Defendant denies that the undisputed record facts disclose a qualifying "reasonable cause" for plaintiffs' late filing of the tax return and late payment of the taxes due. Thus, the principal question presented on cross-motions for summary judgment is whether the information plaintiffs received from a lawyer concerning the time that might be required to complete the estate tax return process was legal advice as to the filing and payment deadlines on which plaintiffs could reasonably rely, thereby providing "reasonable cause" to excuse plaintiffs' late filing and payment of the taxes due.

As the parties' cross-motions for summary judgment have been fully briefed and argued, the matter is now ripe for disposition. Because the undisputed facts and controlling authority compel the conclusion that there is no "reasonable cause" to excuse plaintiffs' late filing and

1

payment of the estate taxes, plaintiffs' motion for summary judgment must be denied, and defendant's motion for summary judgment must be granted.

## I.

The pertinent facts are undisputed and may be succinctly stated.[1] Plaintiffs Lesley West, Peter West, and John West are the surviving children and executors of the estate of June West, who died on December 27, 2009. Shortly after June West's death, Lesley West contacted John Rodgers, June West's attorney, to solicit Rodgers' assistance in settling June West's estate. *See* P. West Dep. Ex. 1. Thereafter, Peter West emailed Rodgers on January 3, 2010, seeking guidance as to "what legal followups are needed in the short term." *Id*. Rodgers replied to the email the next day, advising that plaintiffs would "need to pay [June West's] final bills, and…possibly file a Federal Estate tax return, [June West's] final 1040, and a trust income tax return." P. Br. (Doc. 29), Ex. 1 at 79. Rodgers went on to explain that "[t]his all takes as short as a few months or (if an estate tax return is required) as long as [two] years." *Id*. The following day, Peter West, again via email, responded that he was "sure there will be tax due" on the estate and that he "assume[d]" that John Renner, the accountant hired to do June West's 2009 taxes, "would also take care of preparing estate taxes." Gov't Br. (Doc. 32), Ex. A.

On or around February 1, 2010, plaintiffs met with Rodgers in person to discuss issues relating to the estate. During this meeting, plaintiffs did not inquire about the filing and payment deadlines for the estate tax, nor did Rodgers volunteer that information.[2] In fact, as Peter West

---

[1] The parties agree that the record reflects no genuine disputes of material fact. *See* Transcript of Motions Hearing ("Tr.") at 2:11-3:1, 26:11-14 (Sept. 25, 2015).

later testified at his deposition, "[Rodgers] only gave [plaintiffs], both in the prior email and

during the meeting, a general timeframe of two years for the taxes." P. West. Dep. 13:23-25.

Following this February meeting, plaintiffs had no further contact with Rodgers until November

2010, at which time the filing and payment deadline for the estate tax had already passed.[3] In

November, Peter West met with his siblings around Thanksgiving and thereafter emailed

Rodgers inquiring as to what plaintiffs "need[ed] to do next in order to start work on the estate

taxes." Gov't Br. (Doc. 32), Ex. B. Rodgers interpreted this question as Peter West's hiring him

to prepare the estate taxes, and Rodgers began work preparing the estate tax return in December

2010.[4] Rodgers was not concerned that the deadlines had already passed and he never mentioned

this fact to plaintiffs, as he mistakenly assumed that Renner, the accountant, had obtained the

appropriate extensions, as Peter West had earlier advised Rodgers that Renner would "take care

of preparing estate taxes." Gov't Br. (Doc. 32), Ex. A.

---

[2] *See* Rodgers Dep. 16:3-6; L. West Dep. 19:21-22, 20:1-10; P. West Dep. 13:19-25, 14:1-10; J. West Dep. 9:1-10.

[3] The Internal Revenue Code requires that an estate tax return must be filed, and the taxes due paid, within nine months of the decedent's death. *See* 26 U.S.C. § 6075(a) (filing deadline); *id.* at § 6151(a) (payment deadline). In general, estates can obtain an automatic six-month extension for the filing deadline. *See* 26 C.F.R. § 20.6081-1(b). An extension of time to file, however, does not simultaneously operate as an extension of time to pay the taxes due. *See* 26 U.S.C. § 6151(a); 26 C.F.R. § 20.6081-1(e).

[4] It is worth noting that following plaintiffs' February meeting with Rodgers, plaintiffs were under the impression that Rodgers would be handling the estate tax return. *See* L. West Dep. 27:14-17; P. West Dep. 33:11-18; J. West Dep. 9:17-22, 10:1-2. Rodgers, however, was not of the same mind; he believed that Renner, the accountant hired to do June West's 2009 taxes, was handling the estate tax return. *See* Rodgers Dep. 15:1-3; 17:7-11, 20-22; 18:1-3. Thus, until November 2010, there was apparently a misunderstanding concerning who was responsible for preparing the estate tax return. Resolution of the question presented in this suit does not require assigning fault for this misunderstanding.

In March 2011, Rodgers informed Lesley West that the final estate tax due was $1,258,019. Thereafter, on March 28, 2011, Lesley West mailed the signed tax return to the IRS together with a check in full payment of the tax due. A few weeks later, on May 11, 2011, Lesley West received notice from the IRS that the estate was required to pay late filing and late payment penalties. Lesley West immediately contacted Rodgers, who, on June 8, 2011, requested the IRS to abate the penalties. This request was denied. On October 11, 2011, Lesley West received a notice from the IRS that the estate owed $335,636.76 in penalties and interest, which Lesley West then paid. Thereafter, on December 2, 2011, Rodgers filed a claim on behalf of the estate for a refund of $316,000, which the IRS denied on February 7, 2013.

Slightly less than two years later, on February 5, 2015, plaintiffs initiated this suit seeking a refund of $317,821.05, consisting of $275,037.72 in late filing penalties and $42,783.33 in late payment penalties, with interest on that amount through October 6, 2011. The principal dispute between the parties is whether Rodgers' January 4, 2010 email to Peter West stating that the estate tax process could take "as long as [two] years" constituted legal advice as to the required deadlines for filing and paying the estate tax on which plaintiffs could reasonably rely, thereby establishing "reasonable cause" for the late filing of the return and payment of the taxes. Plaintiffs claim that the email from Rodgers was such qualifying legal advice and also argue that their reliance on this advice justifies their failure to obtain the correct deadline from Rodgers or any other source. Defendant responds that the January 4, 2010 email is not legal advice on which plaintiffs could reasonably rely inasmuch as no reasonable person would understand the email as giving legal advice as to the deadlines for filing and paying the estate taxes. Moreover, defendant argues that even if the email is legal advice as to the deadlines, reliance on such advice does not constitute the requisite "reasonable cause" under § 6651(a).

4

## II.

The summary judgment standard is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The dispositive issues in this case are purely legal, as the parties agree that the record reflects no genuine dispute as to any material facts.[5]

## III.

Section 6651(a) of Title 26, which governs the disposition of the parties' dispute, provides that the IRS can assess a tax penalty for failure to file a timely tax return and pay the tax due unless "such failure is due to reasonable cause and not due to willful neglect." Defendant concedes the absence of plaintiffs' willful neglect. Gov't Br. at 6 n.1. The question, therefore, is whether plaintiffs' untimely filing of the estate tax return and payment of the estate tax due can be excused for "reasonable cause."

A taxpayer shows "reasonable cause" for failure to file on time by demonstrating that he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651-1(c)(1).[6] Similarly, "reasonable cause" for failure to pay on time exists when a taxpayer "exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or

_____

[5] *See supra* n.1.

[6] Where an agency is tasked with administering a statute, as the IRS is tasked with administering the Internal Revenue Code, the agency's interpretation of ambiguous language in that statute is entitled to deference provided it is based on a reasonable construction of the statute. *See Regis v. Holder*, 769 F.3d 878, 881 (4th Cir. 2014) (citing *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The parties offer no reason to doubt that the IRS's interpretation of § 6651(a), as reflected in the regulation, is entitled to deference.

would suffer an undue hardship...if he paid on the due date." *Id.* And significantly, "undue

hardship" requires "more than an inconvenience to the taxpayer." 26 C.F.R. § 1.6161-1(b).

Rather, "[i]t must appear that substantial financial loss, for example, loss due to the sale of

property at a sacrifice price, will result to the taxpayer for making payment on the due date of the

amount with respect to which the extension is desired." *Id.* In sum, it is important to recognize

that "reasonable cause" has *two* elements: a taxpayer must show (i) the exercise of ordinary

business care and prudence *and*, despite the exercise of such care, (ii) an inability to file by the

deadline, an inability to pay the tax due by the deadline, or undue hardship resulting from timely

payment.[7]

Further elucidation of the "reasonable cause" requirement in § 6651(a) is found in the

Supreme Court's leading case on the matter, *United States v. Boyle*, 469 U.S. 241 (1985). In

*Boyle*, a taxpayer claimed "reasonable cause" to excuse a late filing of an estate tax return on the

basis that the attorney hired to file the tax return failed to do so on time. *Id.* at 242-43. The

Supreme Court rejected this claim, holding that there is no "reasonable cause" when a taxpayer

relies on a professional for the ministerial task of filing a timely return on the taxpayer's behalf;

timely filing is a non-delegable duty. *See id.* at 251. In a footnote, the *Boyle* opinion leaves open

the question plaintiffs argue in this case, namely whether there is "reasonable cause" when a

---

[7] *See, e.g., In re Craddock*, 149 F.3d 1249, 1255 (10th Cir. 1998) (requiring individual plaintiff to prove inability to file tax returns in addition to ordinary business prudence); *Valen Mfg. v. United States*, 90 F.3d 1190, 1193 (6th Cir. 1996) (finding that the ability "to forward immediately to the IRS the necessary payments, including penalties," meant that there was no disability and therefore no reasonable cause); *Conklin Bros. of Santa Rosa v. United States*, 986 F.2d 315, 318-19 (9th Cir. 1993) (finding that a corporation was not excused from a tax penalty where, despite exercising ordinary business prudence, the corporation was not disabled from complying with its tax obligations). *See also In re American Biomaterials Corp.*, 954 F.2d 919, 921 (3d Cir. 1992) (holding a corporation excused from a tax penalty when the sole people in charge of filing and paying taxes were embezzling funds from the corporation, thus disabling the corporation's ability to pay).

taxpayer files a late return or tenders a late payment but files or pays within the time that an expert, such as legal counsel, advised. *Id.* at 251 n.9. Courts are split on the answer to this question, with some courts holding that the logic of *Boyle* creates an independent duty for the taxpayer to ascertain and to comply with unambiguous deadlines while other courts limit *Boyle* to its facts, holding that although reliance on an expert for ministerial tasks is insufficient to show "reasonable cause," reliance on an expert to determine a deadline is sufficient.[8] To resolve this case, it is unnecessary to choose sides in this debate, as the record facts here clearly indicate that no expert advice as to a filing or payment deadline was actually provided.

Simply put, Rodgers' January 4, 2010 email to Peter West was not legal advice as to the date of a filing or payment deadline. The language on which plaintiffs seize is Rodgers' comment that "[t]his all takes as short as a few months or (if an estate tax return is required) as long as [two] years." West – 0048. This is insufficient as a matter of law to constitute legal advice as to tax filing or payment deadlines for several reasons. First, nothing in the record indicates that plaintiffs ever asked for a deadline, even before the January 4 email was sent. Indeed, Peter West's January 3 email that prompted Rodgers' January 4 response email simply asked what needed to be done in the "short term." P. West Dep. Ex. 1. Thus, Rodgers was clearly not responding to a request for specific information about a deadline. Moreover, the email does

---

[8] *Compare, e.g., Knappe v. United States*, 713 F.3d 1164, 1171 (9th Cir. 2013) (holding that it is inconsistent with "ordinary business care and prudence" to rely "unquestioningly" on advice about an extended deadline); *McMahan v. Comm'r*, 114 F.3d 366, 371 (2d Cir. 1997) ("[M]isrepresentations [by counsel about an extension request] do not relieve the taxpayer of his duty to ensure that his tax return was filed on time" because filing a timely return is a "non-delegable duty."); *Estate of Kerber v. United States*, 717 F.2d 454, 455-56 (8th Cir. 1983) (holding that reliance on an attorney's erroneous belief as to the date of an estate tax filing deadline is insufficient to constitute reasonable cause) *with, e.g., Estate of Thouron v. United States*, 752 F.3d 311, 315 (3d Cir. 2014) (limiting *Boyle* to its facts).

not contain the language characteristic of advice as to deadlines, *e.g.*, "pay by," "due on," or "file within." Finally, there is no objective basis to determine from what date Rodgers would even calculate a two-year deadline. That is, when Rodgers stated that an estate tax process can take "as long as [two] years," there is no indication of when the two-year period begins to run. Possible answers abound: the date of death, the date of the email, the date of final estate valuation, or perhaps other possibilities. The email's lack of clarity as to any deadlines underscores why it cannot qualify, from any objective standpoint, as legal advice about estate tax filing and payment deadlines.

Yet plaintiffs suggest that the determinative question is not whether the email *was* legal advice but "whether it was reasonable for [plaintiffs] to believe from the e-mail that [Rodgers] sent them [that] they had two years to file the return and pay the taxes." Tr. 17:16-19. In other words, plaintiffs suggest that the dispositive issue is whether it is *objectively reasonable* to interpret the January 4, 2010 email from Rodgers as legal advice concerning the tax filing and payment deadlines. It is not objectively reasonable to interpret the email in this manner. Again, it must be noted that Rodgers' email was not sent in response to a specific request for a deadline. Nor did Rodgers use language one might expect to see in advice about a deadline. Instead, a reasonable reader exercising "ordinary business care and prudence"[9] and reading the email consistent with the general usage of the English language would view the "as long as [two] years" language as stating a general timeframe.[10] Simply put, Rodgers' January 4 email—the basis of plaintiffs' "reasonable cause" claim—is not legal advice as to the estate tax filing or

---

[9] 26 C.F.R. § 301.6651-1(c)(1).

[10] This is precisely how Peter West described the advice in his deposition testimony. P. West. Dep. 13:23-25.

payment deadlines. No reasonable person exercising ordinary business care and prudence would rely on the email for that purpose. To the contrary, a reasonable person exercising ordinary business care and prudence would seek clarification, as plaintiffs might have done during a later face-to-face meeting, which plaintiffs had with Rodgers in February. Indeed, the Supreme Court has made clear that the foundation of the "reasonable cause" exception is that "a taxpayer should not be penalized for circumstances beyond his control." *Boyle*, 469 U.S. at 248 n.6. This case presents no such facts. Here, plaintiffs had ample opportunity to seek clarity as to the deadlines but chose instead to construe vague language as specifying a two-year filing and payment deadline. In sum, plaintiffs' claim of "reasonable cause" based on plaintiffs' reliance on the erroneous advice of counsel fails because plaintiffs never received advice of counsel as to an estate tax filing or payment deadline.[11] Information that an estate tax process might take "as long as [two] years" is not advice about deadlines for filing a return or paying any tax due.

The cases on which plaintiff chiefly relies do not require a different result; they are readily distinguishable. In *Sanderling v. Comm'r*, 571 F.2d 174 (3d Cir. 1978), the Third Circuit found that the taxpayer established "reasonable cause" for late filing where the taxpayer corporation charged its accountant with filing a tax return, a task that necessarily required the accountant to ascertain the correct filing deadline. *Id.* at 178. Because the accountant in *Sanderling* clearly made a determination about the filing deadline and acted on that determination on behalf of the taxpayer, *Sanderling* is distinguishable from this case, as Rodgers, unlike the accountant in *Sanderling*, never offered any legal advice as to the filing or payment

---

[11] It is important to note that Rodgers' January 4 email was sent in response to Peter West's January 3 email in which Peter West indicated that Renner, an accountant, would be handling the estate taxes. *See* Gov't Ex. A. In light of this information, there would be no reason for Rodgers to offer any advice about the estate tax deadlines in the January 4 email.

deadlines.[12] Nor is this case like *Estate of Thouron v. United States*, in which the taxpayer

missed the appropriate deadline by virtue of reliance on clear advice from counsel rather than, as

here, by reliance on an unreasonable interpretation of a vague statement. *See* 752 F.3d 311, 312-

13 (3d Cir. 2014) (setting forth the facts of *Thouron* and providing no indication that the advice

was anything other than unambiguous); *Estate of Thouron v. United States*, 2012 WL 5426807,

at *1 (E.D. Pa. Nov. 7, 2012) (same).

      Although plaintiffs' failure to exercise ordinary business care and prudence is sufficient

standing alone for defendant to prevail, it is worth noting that plaintiffs have also failed to make

the requisite showing of the second element of "reasonable cause," namely an inability to file,

inability to pay, or undue hardship.[13] *See* 26 C.F.R. § 301.6651-1(c)(1). As to the late payment

penalties, not only do plaintiffs fail to identify facts in the record supporting a finding of inability

to pay or undue hardship, the record facts foreclose any such argument. As reported to the IRS,

the total estate value was $5,650,103, of which $4,650,103 was from stocks and a money market

account, assets that are presumably very liquid. P. Ex. 2; *see also* P. Br. (Doc. 29), Ex. 1 at 91.

The total estate asset value is more than sufficient to pay both the assessed tax and the penalties.

Indeed, payments were readily made, which is unsurprising given the estate's relative liquidity.

*Cf. Valen Mfg.*, 90 F.3d at 1193 (ability to pay the tax and penalty cuts against finding reasonable

---

[12] Notably, *Sanderling*, which is pre-*Boyle*, is of doubtful authority in the wake of the *Boyle* decision. *See supra* n.8 (collecting cases supporting the proposition that following *Boyle* taxpayers have a non-delegable duty to ascertain correct filing deadlines). The same is true of *Willis v. Comm'r*, 736 F.2d 134 (4th Cir. 1984), in which the Fourth Circuit employed a multi-factor standard, *id.* at 139-40, rather than the "rule with as 'bright' a line as can be drawn" that the Supreme Court laid down in *Boyle*, 469 U.S. at 248. *Accord Valen Mfg.*, 90 F.3d at 1193 (suggesting that *Willis* is not authoritative after *Boyle*).

[13] *See supra* n.7 and accompanying text. Neither party addressed this element of the "reasonable cause" requirement in briefing, although the topic arose at oral argument. *See* Tr. at 28:9-30:10; 33:13-34:3.

cause). Nor would plaintiffs have been unable to meet the filing deadline due to a lack of information, such as the appropriate valuation.[14] As courts routinely hold, taxpayers have a duty to file a return with the best information available by the filing deadline, and if more accurate information emerges, filing an amended return is appropriate. *See, e.g., Craddock*, 149 F.3d at 1257. Accordingly, the facts in the record point convincingly away from a finding of inability to pay by the deadline, inability to file by the deadline, or undue hardship as a result of having to pay the tax by the deadline.

## IV.

For the foregoing reasons, plaintiffs fail to establish that their untimely filing and payment of an estate tax is excusable for "reasonable cause." Accordingly, plaintiffs' motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.[15]

An appropriate order will issue.

Alexandria, Virginia
October 19, 2015

/s/
T. S. Ellis, III
United States District Judge

---

[14] Following *Boyle*, some courts have distinguished inability to file due to a genuine disability, such as corporate embezzlement, from inability to file due to reliance on an agent; the former can give rise to reasonable cause, but the latter cannot. *See Conklin Bros.*, 986 F.2d at 318 (citing *Boyle* for this distinction); *see also Valen Mfg.*, 90 F.3d at 1193 (citing *Conklin Bros.* with approval); *American Biomaterials Corp.*, 954 F.2d at 921 (finding a qualifying disability as a result of corporate embezzlement).

[15] This conclusion is not reached with enthusiasm, as the taxman is hardly a popular or sympathetic figure. In the unfortunate circumstances of this case, there is some appeal to doing here as King Henry VIII did in the eponymous Shakespearean history when, appalled by the consequences of a tax enacted in his name, he granted "[f]ree pardon to each man that has denied [t]he force of th[e] commission." *See* William Shakespeare, Henry VIII act 1, sc. 2. But unlike the England of Henry VIII, we adhere to the rule of law, and the law compels the result reached here.